[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an Unlawful Entry and Detainer action brought under47a-43 et seq in which the plaintiff, a tenant under an oral month to month lease since March, 1993, was locked out of his apartment on February 26, 1994 by his landlord. The defendant landlord has filed an answer denying all material allegations of the complaint and alleges specially that the plaintiff abandoned and vacated the premises prior to February 26th. CT Page 4703
It appears from the evidentiary hearing that followed that the plaintiff was delinquent in the payment of his rent ($300/month) during December, 1993 and January, 1994 and on several occasions prior thereto. During and after this time the parties were not on the best of terms. It is fair to say that both had become disenchanted with their landlord-tenant relationship to the point where the landlord contemplated evicting plaintiff and plaintiff had contemplated moving. Neither party informed the other of these intentions. However, the defendant had turned over the matter to his attorney for eviction. In late January and early February plaintiff tendered two checks, one for two months back rent and other for partial February rent which were accepted by defendant. Then without notice to the landlord, plaintiff moved substantially all of his personal effects from the subject premises on/about February 18, 1994. The plaintiff, however, never returned his key to the defendant and continues to possess the same to the present time. Between February 18th and February 25th the plaintiff leased a room from a friend in Stratford where he spent most of his non-working time. He would return to his apartment daily in the mornings solely for the purpose of feeding a dog which he had informally adopted. The dog's food was typically placed in a bowl located immediately outside the door of the apartment and the dog allowed to roam unattended in the hallways and outside the premises after these feedings. No one living at the subject premises ever saw the plaintiff or the dog during these times. On February 18th plaintiff requested the Gas company terminate his gas service at the subject premises, effective Feb. 22nd.[1]
And on February 23rd he terminated his phone service. In the meantime, the defendant was told by his son of seeing the plaintiff move all of his belongings out of the apartment on or about February 18th. In addition, no one living at the subject premises had seen the plaintiff about the premises since that day. On the 25th the landlord visited the plaintiff's apartment and finding the door open and the apartment empty of all plaintiff's personal effects, he changed the locks and immediately arranged to re-let the apartment to another tenant.[2]
On the morning of February 26th the plaintiff returned to the apartment, presumably to feed the dog, but was unable to gain entry due to the lock change. The next day he again returned to the premises, this time with a policeman, and met with the landlord, demanding that defendant surrender possession to him. During a heated argument that followed, plaintiff informed the policeman that he had "moved but that it hadn't worked out" and CT Page 4704 he had returned to the subject premises to resume his tenancy. The plaintiff was not permitted entry on this day. This suit followed. In the interim, plaintiff moved in with his parents in Trumbull but has subsequently removed from that location. However, ever since February 26th, plaintiff has consistently sought restoration to the subject premises.
THE LAW
The single issue raised by the pleadings in this case is whether or not the plaintiff has abandoned the premises. The defendant's entire defense is predicated on the theory that he is exempt from the sanctions under 47a-43 et seq. and was not obliged to comply with the requirements under chapters 831 and 832 CGS dealing with summary process in order to dispossess the plaintiff. The plaintiff argues that abandonment is statutorily defined in 47a-11b(a) and that the circumstances of this case do not come within the purview of that definition.
The plaintiff's reliance on the statute is misplaced in the context of this case. This is because his major premises that the statute displaces the common law definition of abandonment is incorrect. 47a-11b on which the plaintiff relies provides in pertinent part:
 "(a) For the purposes of this section, `abandonment' means the occupants have vacated the premises without notice to the landlord and the net intend to return, which intention may be evidenced by the removal by the occupants . . . of substantially all of their possessions and personal effects from the premises and either (1) nonpayment of rent for more than two months or (2) an express statement by the occupants that they do not intend to occupy the premises after a specified date." (emphasis added)
Under common law, abandonment is defined as the voluntary and intentional renunciation of a known right and the intent required may be inferred from the surrounding facts. Pizzuto v.Newington, 174 Conn. 282, 285 (1978) and cases cited therein. See also, State v. Zindros, 189 Conn. 228, 240 (1983) and Stankiewiczv. Hawkes, 33 Conn. Sup. 732 (App. Sess., Super. Ct., 1976). The plaintiff cites no authority to support his claim that the aforementioned statute abrogates or changes this definition. To the contrary, the statutory definition of abandonment is totally consistent with the common law concept. This conclusion is CT Page 4705 abundantly clear from the legislative history of the statute which the plaintiff himself cites in his brief.[3]
Similar to the common law the statute requires proof of both the act of relinquishment and the intent to relinquish. As at common law intention under the statute may be proven circumstantially. However, the statute specifies two circumstances which in themselves will establish the element of intent when combined with act of relinquishment, i.e., non-payment of rent in excess of two months or an expressed intent non to occupy after a specified date. At common law these circumstances would not by themselves establish the requisite intent but obviously could be considered with all of the circumstances of the case. This is not to say that proof of the element of intent in the concept of abandonment is restricted to the two circumstances specified in the statute. To the contrary, intent may be proven either under the broader common law standards or by resort to the indicate specified in the statute. In any event, contrary to plaintiff's urging, the common law standard was not abrogated. See, H.R. Proc., 1992 sess., pp. 5836-5838.
In the case an bar, defendant has the burden of proving abandonment. Davis v. Gleeson, 5 Conn. Sup. 325 (1937). However, if the statutory standard of proving the element of intent is used, defendant's proof cannot pass muster. There was no period in excess of two months in which rent was not paid. Further, there was no statement whatsoever as to when the plaintiff would vacate. If the requisite intent is to be found it must be found under the broader standard required under common law- the totality of circumstances. In this regard, the court concludes that the defendant has successfully met this burden.
One of the most important facts which support the requisite intent is the plaintiff's own admission to the police officer on February 26th: that he moved out, but it didn't work out. This combined with the fact that he voluntarily terminated a utility (gas service) which was essential to his continued residence at the subject premises and discontinued his phone service all prior to the day on which he returned to the premises to resume his tenancy. In addition, with regard to the termination of the gas service, the plaintiff also requested that a final bill be sent to his parents' address, the place where he eventually relocated, albeit temporarily, after February 26th. It is also noteworthy that none of these services were requested to be reinstalled or CT Page 4706 reinstated on or after the 25th when the plaintiff claims he changed his mind about moving out. Finally, plaintiff left the door to his apartment unlocked and open in his absence making it accessible to virtually anyone wishing to enter. All of these facts are consistent with an intent to relinquish the apartment and inconsistent with its retention.
The plaintiff's most significant claim to support an intent to retain his tenancy in spite of his physical absence from the premises is that he retained the key to the premises at all times relevant to this inquiry. This, however, is but one factor in the determination of the issue. Although it is legion in the law that the retention of the keys to the premises is evidence of constructive possession thereof, this circumstance is not conclusive of the issue. The key is merely the symbol or token of ownership of the estate and must fall in the face of overwhelming evidence to the contrary. In this case evidence of the requisite intent is to be determined by resort to the totality of the circumstances. Pizzuto v. Newington, supra. The surrounding circumstances overwhelmingly support an intent to abandon the premises.
Now the plaintiff suggests in his argument that the defendant acted in bad faith in seizing upon the opportunity to take possession of the premises immediately upon learning of the plaintiff's removal and therefore cannot claim protection against the sanctions imposed by our entry and detainer statutes or the requirement for summary proceedings under chapters 831 and 832 CGS. This claim is without merit.
47a-11b(c) provides in pertinent part:
 "The landlord shall not be required to serve a notice to quit as provided in section 47a-23 and bring a summary process action as provided in section 47a-23a to obtain possession or occupancy of a dwelling unit which has been abandoned.
Nothing in this section shall relieve a landlord from complying with the provisions of sections . . . 47a-23 to 47a-42, inclusive, if the landlord knows, or reasonably should know, that the tenant has not abandoned the dwelling unit." (emphasis added)
This section essentially relieves a landlord of the liabilities to a tenant for a non-processed dispossession where the tenant has in fact abandoned the tenancy irrespective of CT Page 4707 whether that abandonment is established by common law or statutory indicate. It also serves to protect a landlord against certain liabilities where there has been no abandonment, provided he in good faith believed the tenant had abandoned the premises. In short, if the tenant has abandoned the premises, then no liability attaches to the landlord if he takes possession within a reasonable time after abandonment.[4] Consequently, if in fact there has been an abandonment under either common law or statutory indicate, the landlord's good faith or knowledge is immaterial. Those factors only become relevant under the statute where there was no abandonment. Then, and only then, does the reasonableness and knowledge become material to the landlord's liability to the tenant.
In the case at bar, the abandonment occurred at the precise time when the act of relinquishment of the tenancy coincided with the intent to relinquish. That moment occurred when the plaintiff notified the gas and telephone companies to discontinue their services after having removed all of his worldly possessions from the premises. In point of time the act and intent concurred on or about February 23, 1994, at least one full day before the defendant entered plaintiff's empty apartment and changed the locks. It matters not that at the time of entry the landlord did not know of the objective evidence of intent because the fact of abandonment had already occurred. On the other hand, had the fact of abandonment not occurred when the landlord dispossessed the tenant, then the issues of the landlord's reasonableness, good faith and knowledge would be relevant to whether or not he would enjoy the protections of 47a-11b(c). In other words, 47a-11b(c) operates to protect a landlord's entry even where there has been no abandonment, provided he acts reasonably, i.e., that he reasonably believed that the tenant had abandoned the premises employing the statutory standards provided in 47a-11b(a). See. H.R. Proc. supra, pp. 5837.
The lesson to be learned from this case is that where the landlord acts to dispossess a tenant without the benefit of summary proceedings and without actuality knowing that the tenant has abandoned the premises, he acts imprudently. If he acts precipitously, as the defendant did in this case, he acts at his peril unless an abandonment has in fact taken place before dispossession. In this case the defendant gambled and won. However, 47a-11b rewards prudence and importunes against such risks as the defendant took. CT Page 4708
For all of the reasons herein stated, the court is constrained to enter judgement in favor of the DEFENDANT.
BY THE COURT
MELVILLE, J.